IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRIGITTE E. GARRETT, )
 )
        Plaintiff, )
 )
v. ) Case No. 12-CV-214-GKF-TLW
 )
CAROLYN W. COLVIN, Acting )
Commissioner, Social Security )
Administration, )
 )
        Defendant. )

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge T. Lane Wilson on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #21] and the Objections thereto filed by plaintiff, Brigitte E. Garrett. [Dkt. #22]. The Magistrate Judge recommended the Commissioner's decision be affirmed.

### I. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but

cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail). The claimant bears the burden of proof at steps one through four. *Williams*, 844 F.2d at 751 n. 2. At step one, a determination is made as to whether the claimant is presently engaged in substantial gainful activity. *Id.* at 750. At step two, a determination is made whether the claimant has a medically determinable impairment or combination of impairments that significantly limit her ability to do basic work activities. *Id.* at 751. At step three a determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* If it is, the claimant is entitled to benefits. *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents her from performing work she has performed in the past. *Id.* If the claimant is able to perform her previous work, she is not disabled. *Id.* If she is not able to perform her previous work, then the claimant has met her burden of proof, establishing a prima facie case of disability. The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity ("RFC")[1] to perform other work in the national economy in view of her age, education, and work experience. *Id.* The Commissioner bears the burden at step five, and the claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

---

[1] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite her impairments: the claimant's maximum sustained work capability. *Williams,* 844 F.2d at 751.

## II. Background

Plaintiff previously received Supplemental Security Income ("SSI") benefits for some 20 years, because she suffered from post-traumatic stress disorder. [R. 40, 353, 371-379]. The benefits were discontinued when she went to prison in January 2007. [R. 40]. After she was released from prison in December 2007, plaintiff—then 49—reapplied for SSI benefits, alleging a disability onset date of January 2, 2008. [R. 350-352]. She claimed she was unable to work due to depression and anxiety. [R. 408]. Her claim for SSI benefits was denied initially on April 28, 2008, and on reconsideration on August 4, 2008. [R. 234-235].

Following two hearings, the ALJ issued a decision on February 19, 2010. [R. 236-48]. In the decision, the ALJ determined at step one that plaintiff was effectively performing substantial gainful activity ("SGA"), but proceeded through step four of the process. [R. 241-248]. He found at steps two and three that plaintiff had "severe" medically determinable impairments of diabetes mellitus and affective mood disorder, but that the impairments did not singly or together meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 242]. At step four, the ALJ found plaintiff had the RFC to perform the full range of sedentary work and was therefore capable of performing her past relevant work as a telemarketer. [R. 242-248]. The ALJ concluded plaintiff had not been under a disability since the date the April 2008 application was filed. [R. 248].

The Appeals Council remanded the case for two reasons: (1) the ALJ found plaintiff's affective mood disorder to be a severe impairment at step two, but included no mental limitations in plaintiff's RFC; and (2) the ALJ incorrectly found that plaintiff's part-time work was SGA. [R. 250-252].

On June 8, 2011, the ALJ held a third hearing on plaintiff's claim. [R. 32-101]. On July 25, 2011, the ALJ issued a decision once again finding plaintiff not disabled and denying SSI benefits. [R. 7-24]. The ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of her application for benefits because, although she had worked after the application date, her actual earnings did not rise to the level of SGA. [R. 12-13].

The ALJ found at step two that plaintiff's diabetes mellitus and affective mood disorder were "severe impairments;" he found that plaintiff's other alleged impairments —high blood pressure, high cholesterol and inflammation of her joints—were non-severe. [R. 13].

At step three, the ALJ found that neither the diabetes nor the affective mood disorder, singly or in combination, met or medically equaled a listing. [*Id.*]. In making this determination, he considered Medical Listing 9.08, which addresses diabetes mellitus; Medical Listing 12.04, which addresses mental impairment; "paragraph B" criteria; and "paragraph C" criteria. [R. 13-15]. He noted that to satisfy "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. [R. 13]. He found that plaintiff had only mild restrictions in the activities of daily living and maintaining social functioning, and moderate difficulties with regard to concentration, persistence, or pace. [R. 13-14]. He found she had experienced no episodes of decompensation which had been of extended duration. [R. 14]. Further, the ALJ found the evidence failed to establish the presence of "paragraph C" criteria. [R. 14-15].

At step four, the ALJ found that plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b). [R. 15]. The ALJ found that plaintiff was

physically able to lift 10 pounds frequently and 20 pounds occasionally, stand and/or walk six hours in an eight-hour work day, and sit for six hours in an eight-hour work day. [*Id.*]. Furthermore, the ALJ found that plaintiff had a mild limitation in her ability to understand detailed instructions and maintain attention or concentration for extended periods. [*Id.*]. He found plaintiff had no past relevant work, because her job as a telemarketer had been part-time and her earnings were less than that required for SGA. [R. 22]. He found that at the time plaintiff filed her application, she was 48 years old, which is defined as a "younger individual age 18-49," but subsequently she changed categories to "closely approaching advanced age" under 20 C.F.R. § 416.963. [*Id.*]. Plaintiff has at least a high school education and is able to communicate in English. 20 C.F.R. § 416.964. [R. 23]. Transferability of job skills is not an issue because she does not have past relevant work. 20 C.F.R. § 416.968. [*Id.*].

At step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that plaintiff could perform. 20 C.F.R. §§ 416.969, 416.969(a). Specifically, he found that she would be able to perform the jobs of Food Services Worker, Electrical Assembler, Order Clerk, and Circuit Board Assembler. [R. 23-24]. Therefore, the ALJ found that plaintiff had not been under a disability as defined by 20 C.F.R. §§ 416.920(g) or 416.920(f) since the date her application was filed. [R. 24]. The Appeals Council denied review, and plaintiff appealed. [R. 1-5].

In her appeal, plaintiff argued (1) the ALJ failed to perform a proper determination at step five of the sequential evaluation process, because, while he found at step two that plaintiff had mild limitations in performance of activities of daily living and social functioning and a moderate deficiency in her concentration, persistence or pace, the hypothetical he posed to the

6

vocational expert failed to properly reflect those limitations; (2) the ALJ failed to properly consider the Medical Source Statement; and (3) the ALJ's credibility determination was faulty.

Magistrate Judge Wilson, in his Report and Recommendation, recommended the Commissioner's decision be affirmed. [Dkt. #21]. Plaintiff timely filed her objection to the Report and Recommendation. [Dkt. #22]. She specifically challenges (1) the Magistrate Judge's finding that the limitations found by the ALJ at the severity stage should not be carried over as limitations at the RFC stage; in making this challenge plaintiff alleges such limitations should have been presented to the vocational expert; by doing so plaintiff also challenges whether the ALJ's decision to exclude these limitations from the assessed RFC is supported by substantial evidence; (2) the Magistrate Judge's finding that there is no evidence the doctor who formulated her disability report was her "treating physician;" and (3) the Magistrate Judge's finding that the ALJ's credibility determination was sufficient. [*Id.* at 1-6].

### III. Analysis

#### A. RFC

Plaintiff contends that since the ALJ found at steps two and three that she had moderate difficulties in concentration, persistence, or pace, that the ALJ was required to include in plaintiff's RFC moderate—rather than mild—limitations in her ability to understand detailed instructions and maintain attention or concentration for extended periods. Further, plaintiff argues that, since the ALJ found at steps two and three that plaintiff had mild restrictions in her activities of daily living and maintaining social functioning, that those restrictions should have been included in her RFC and in the hypothetical question posed to the vocational expert.

The ALJ must first decide whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Under Social Security regulations,

the Commissioner then follows a special technique to evaluate the severity of mental impairments and their effect on the claimant's ability to work. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). *See Wells v. Colvin*, ___ F.3d ___, 2013 WL 4405723 at *4 (10th Cir. Aug. 19, 2013). The regulatory scheme requires that the ALJ must rate the degree of the functional limitation resulting from a mental impairment in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see also Wells*, *supra*. For the first three functional areas, the ALJ rates the claimant's degree of limitation using a five-point scale ranging from none, to mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). For the last functional area, episodes of decompensation, the ALJ rates the claimant's degree of limitation using a numerical scale of none, one or two, three, or four or more. *Id.* As the Tenth Circuit explained in *Wells*, "the ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis." 2013 WL 4405723 at *4 (citing 20 C.F.R. §§ 404.1520a(d), 416.920a(d)).[2]

Here, the ALJ found that plaintiff had the mental impairment of affective mood disorder. [R. at 13]. The ALJ then determined plaintiff's affective mood disorder to be severe, noting plaintiff had: (1) only mild restrictions in the activities of daily living and social functioning, (2) moderate difficulties in concentration, persistence, or pace, and (3) no episodes of decompensation that had lasted an extended duration. [R. 14].

In *Wells*, the Tenth Circuit rejected the argument now put forth by plaintiff, that limitations found with respect to the paragraph B severity assessments control the RFC findings, noting that limitations used in assessing whether plaintiff's impairments are severe at steps 2 and

---

[2] The ALJ, in his decision, explained that the limitations in the paragraph B criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three, whereas the RFC assessment is used at steps four and five. [R. 15].

8

3 of the sequential evaluation process do not directly correlate to identical limitations in plaintiff's RFC at steps 4 and 5, as the ALJ's evaluation in determining plaintiff's RFC "require[s] a more detailed assessment."  2013 WL 4405723 at *5 (citations omitted).  In *Beasley v. Colvin*, 2013 WL 1443761, at *5 (10th Cir. 2013) (unpublished),[3] the Tenth Circuit expressly rejected plaintiff's line of reasoning, noting that the ALJ need not find that Beasley's RFC included a moderate limitation in social functioning, merely because the ALJ had previously found Beasley moderately limited in social functioning in determining Beasley's mental impairment severe.  *Id.* (citations omitted).  Accordingly, an ALJ's decision not to include limitations found at the severity phase as limitations at the RFC phase is not reversible error, so long as whatever limitations found or rejected by the ALJ in formulating his RFC findings are supported by substantial evidence.  *Id.* at n.3 (declining "to read this court's dicta in a footnote in *Frantz v. Astrue*, 509 F.3d 1299, 1303 n. 3 (10th Cir. 2007), as requiring an ALJ's RFC assessment to mirror his step three-findings.").

Thus, in this case, the ALJ's determination at the RFC phase that plaintiff had only mild limitations in understanding detailed instructions and maintaining attention or concentration for extended periods is not error simply because the ALJ had previously determined that plaintiff had moderate limitations in concentration, persistence, or pace for purposes of assessing the severity of her affective mood disorder.  Nor is any error manifested purely by the ALJ's determination that, while plaintiff had mild limitations in social functioning and activities of daily living at the severity stage, that such limitations did not carry over at the more detailed RFC determination.  *Wells*, 2013 WL 4405723 at *5.  Moreover, so long as the Commissioner's RFC finding is supported by substantial evidence, no error has been committed at this step.

---

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

*Beasley* at *3. The court finds that the Commissioner's RFC finding, regarding plaintiff's mental health, is not supported by substantial evidence due to numerous factual inaccuracies in the Commissioner's decision, as discussed below.

In finding that plaintiff's only mental limitation was a mild limitation in her ability to understand detailed instructions and maintain attention or concentration for extended periods, the ALJ engaged in a lengthy discussion. [R. 15-22]. In this discussion, the ALJ provided the following reasons for his mental health RFC assessment: (1) that a January 21, 2010 discharge record from Family and Children's Services showed "improvement" and "client termination," (2) that plaintiff "elected not to continue treatment," (3) that plaintiff "testified that she [was] not receiving treatment for her psychiatric or mental symptoms," (4) that the ALJ found a "review of her medications list finds no evidence of the use of any medications designed to treat psychiatric or mental symptoms," and (5) that plaintiff "voluntarily withdrew from treatment" by Family and Children's Services, "giving rise to a factual finding that she [had] no further need of such services." [R. 20-21]. Based on this analysis, the ALJ concluded that plaintiff "suffers only mild mental limitations in her ability to understand detailed instructions and maintain attention/concentration for extended periods." [R. 20]. However, each of the above factual findings is unsupported by the administrative record.

With respect to the first two reasons, that the ALJ determined that plaintiff terminated mental health treatment after her mental health improved, the court notes that the Discharge Summary from Family and Children's Services does not support such a finding. [R. 20]. While this record does note that plaintiff's management of her emotions had improved, it simultaneously reflects that plaintiff's "condition at [discharge was] unknown." [R. 855]. Moreover, the underlying clinician notes from Family and Children's Services paint a picture of

10

an individual with significant issues. During plaintiff's treatment, this facility assessed her with Global Assessment of Functioning ("GAF") scores of 48 and 50. [R. 828, 858]. As noted in *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012), a GAF of 41 to 50 reflects "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Additionally, the clinician notes reflect that plaintiff was frequently tearful, engaged in bulimic purging, and had significant regrets about her relationship with her minor child. [R. 822-836, 853-858]. Indeed, the only notation of improvement by Family and Children's Services was made on the one page Discharge Summary when her condition was then unknown. [R. 855]. The ALJ places significant reliance upon the checkbox Discharge Summary; indeed it is the only mental health medical record the ALJ cites in reaching his mild mental RFC finding. As the Family and Children's Services facility was not even aware of plaintiff's condition at the time of discharge, the ALJ's significant reliance upon this checkbox form is not well supported. Moreover, the ALJ notes that the Discharge Summary reflects that plaintiff "elected not to continue treatment" after the facility recommended plaintiff continue treatment. [R. 20]. Yet, the record actually reflects that the facility merely "welcomed" plaintiff "in the future if desired," and noted that plaintiff was ordered to family counseling with an agency abbreviated as FIND. [R. 855]. And the record further reflects that plaintiff sought treatment for her psychiatric and mental conditions with Community Health Connection after terminating her treatment with Family and Children's Services. [R. 859-863].

With respect to reasons three and four, that plaintiff testified she was "not receiving treatment for her psychiatric or mental symptoms" and that a review of her medications list "finds no evidence of the use of any medications designed to treat psychiatric or mental

symptoms," the court notes that the record evidence actually demonstrates facts to the contrary. While the ALJ maintained that plaintiff testified she was not receiving mental health treatment, in actuality, plaintiff merely testified that her provider for such services had changed. [R. 21, 53-54]. During the June 2011 hearing, plaintiff testified that she had changed providers from Family and Children's Services to Community Health Connection. [R. 53-54]. As such, the ALJ's factual finding that plaintiff testified she stopped receiving mental health treatment because "it was too hard," is not supported by substantial evidence. Next, the ALJ's reasoning that plaintiff's medical records demonstrate "no evidence of the use of any medications designed to treat psychiatric or mental symptoms" is likewise contradicted by the record. Plaintiff's pharmaceutical records reflect a prescription in the spring of 2011 for Sertraline [R. 873], which is commonly known as Zoloft,[4] and clinician notes in the spring of 2011 providing plaintiff with samples of Pristiq.[5] Thus, the ALJ's findings that plaintiff testified she was no longer receiving treatment and that the record reflected she was no longer receiving or using psychiatric medications is not supported by substantial record evidence.

Lastly, the fifth reason provided by the ALJ in reaching his mental health RFC determination, that plaintiff's voluntary "withdr[awal] from treatment" from Family and Children's Services, "[gave] rise to a factual finding that she [had] no further need of such services" is not supported by substantial evidence. While it is true that plaintiff discontinued treatment at Family and Children's Services [R. 855], the record does not reflect that she no longer needed mental health treatment. This is evidenced by the fact that she began psychiatric treatment with Community Health Connection after terminating her treatment with Family and

---

[4] Pfizer, http://www.zoloft.com (last visited Sept. 27, 2013). Pfizer notes Zoloft is FDA approved to treat Major Depressive Disorder, Obsessive Compulsive Disorder, Panic Disorder, Posttraumatic Stress Disorder, Social Anxiety Disorder, and Premenstrual Dysphoric Disorder.
[5] Pfizer, http://www.pristiq.com (last visited Sept. 27, 2013). Pfizer notes Pristiq is FDA approved to treat depression in adults.

Children's Services. [R. 860-863]. On March 5, 2011, plaintiff sought psychiatric care from Community Health Connection, where she presented to clinicians as tearful and was prescribed 100 mg of Sertraline daily for thirty days. [R. 862-863]. Plaintiff returned to Community Health Connection on April 20, 2011 complaining that she did not react well to the medication, that she could not fall or stay asleep, that she could not get in to see the clinic when she called by phone, and requested to see a psychiatrist. [R. 860]. Plaintiff also reported that her "nerves" had not reacted well to past psychiatric medications, including "Paxil, Prozac, Xanax, [and] Tofranil." [R. 861]. Plaintiff was diagnosed with an anxiety disorder and given two weeks of Pristiq samples. [R. 861]. Plaintiff was told that she would be able to see Dr. White as soon as he was available. [R. 861]. Thus, the ALJ's finding that plaintiff had ceased mental health treatment because she did not need it is not supported by substantial evidence.

As every stated factual basis relied upon by the ALJ in reaching his finding that plaintiff's only mental health limitation was a mild limitation with respect to her ability to understand detailed instructions and maintain attention or concentration for extended periods has been determined to be unsupported by the administrative record, this court finds that the Commissioner's RFC finding as to plaintiff's mental health is not supported by substantial evidence. Therefore, the decision must be reversed and remanded for further consideration at step four of plaintiff's mental limitations.

### B. Medical Source Statement

The ALJ gave "little weight" to the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" completed by a resident at OU Family Medicine. [R. 18]. On appeal, plaintiff argued the ALJ failed to properly consider the medical source opinion and "engage[d] in pure speculation" in rejecting the doctor's evaluation. [Dkt. #13 at 3-4].

13

Characterizing the resident as her "treating physician," she asserts the ALJ's finding was "unsupported by the required substantial evidence." [*Id.*].

Under Social Security regulations, the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to "controlling weight" when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record. *Doyal*, 331 F.3d at 762 . For opinions that do not qualify as treating physician's opinions, the ALJ need only consider the opinion evidence and "provide specific, legitimate reasons for rejecting it." *Id.* at 764.

The ALJ's decision appeared to treat all of plaintiff's physicians equally as "examining physicians." *See* 20 C.F.R. § 416.927. Therefore, he was required only to consider the resident's opinion in the Medical Source Statement and to provide specific, legitimate reasons for rejecting it.[6]

The ALJ explained his reasoning as follows:

> Upon review of the report and opinion of the resident, it appears the physician relied quite heavily on the subjective report of symptoms and limitations provided by Ms. Garrett and seemed to uncritically accept as true most, if not all of what Ms. Garrett reported to be limiting. However, as has been explained elsewhere in this decision, there exist[s] a well-supported basis to question the reliability and severity of Ms. Garrett's subjective complaints. Thus, I give little weight to the above Medical Source Statement and the limits stated therein.
>
> The reasons for this are severalfold. First, Ms. Garrett testified she has been working 3 ½ to 4 hours a day, five (5) days a week as a telemarketer since February 2008. At the time of this writing this means that she has been able to sustain work—showing up regularly, not missing work, and meeting her telemarketing quotas for more than three (3) years. Indeed, when asked, Ms. Garrett stated she did not have any problems doing this job, did not leave work early often and is generally successful in staying the hours they ask of her.

---

[6] To the extent the Magistrate Judge implied that the ALJ explicitly determined the resident was not a "treating physician," the court disagrees. Nonetheless, the court concurs with the Magistrate Judge's conclusion that the ALJ did not err in rejecting the opinions expressed in the Medical Source Statement.

> Although the resident opined that Ms. Garrett could not work on a continued or sustained basis because of her hip and back, the evidence does not reflect Ms. Garrett has received much in the way of treatment for these alleged impairments and, further, Ms. Garrett testified at the hearing that she was no longer being prescribed medication for joint inflammation.

[R. 18].

The ALJ's decision to give little weight to the Medical Source Statement drafted by a resident from OU is supported specific and legitimate reasons. Further, his decision regarding plaintiff's physical RFC was consistent with and supported by substantial record evidence. [R. 17-19]. The ALJ's physical RFC finding is supported by, among others, the examining clinician records of Hillcrest Medical Center (Dr. Snider), the examining clinician records of the University of Oklahoma Physician's Clinic (including doctors Hanjari and Paudel), and laboratory results from Advanced Imaging. Therefore, the court concurs with the Magistrate Judge's finding that the ALJ's reasons for giving little weight to the Medical Source Statement are specific and supported by substantial evidence.

### C. Credibility

The ALJ found that "Ms. Garrett's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Ms. Garrett's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." [R. 17].

Plaintiff asserts that in making this determination, the ALJ improperly rejected her subjective complaints, used "boilerplate language" and failed to make sufficiently specific findings.

The Tenth Circuit has stated:

15

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quotations and citations omitted).

Further, the use of "boilerplate findings" is insufficient to support the ALJ's credibility determination only "in the absence of a more thorough analysis." *Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004).

The ALJ may consider a number of factors in assessing a claimant's credibility, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ acknowledged plaintiff suffered from "severe" impairments of diabetes and affective mood disorder, but found that her descriptions of her symptoms and limitations "have generally been inconsistent and unpersuasive." [R. 20]. He stated:

> Specifically, I find that Ms. Garrett's description of her symptoms is unusual, and is not typical for the impairments that are documented by the medical findings in this case. More to the point, as explained earlier, Ms. Garrett's assertions of both a physical and mental inability to function beyond a few minutes at a time (i.e., standing and walking only "3 to 5 minutes" and concentrating only a "few minutes") is simply not supported by a common-sense, much less 'legal' interpretation of the evidence.

[R. 21].

The ALJ provided the following appropriate reasons, which this court finds to be supported in law and fact, for his adverse credibility determination:

16

- When seen by Dr. Paudel in July 2009, plaintiff reported her pain as "continuous" and rated it as a "9" on a pain scale of 1-10.  The ALJ found this level of pain was not substantiated by the "rather mild objective findings found throughout the evidentiary record. . . ." [R. 20-21].

- Plaintiff testified she is no longer receiving medication or treatment for "joint inflammation" and her diabetic examination was "normal" in 2011.  [R. 21].

- The medical records reveal that when plaintiff is compliant, the medications have been relatively effective in controlling her symptoms, and a follow-up examination performed by Dr. Paudel in June 2010 revealed general examination and diabetic management examination were within normal limits; Dr. Paudel noted plaintiff's diabetes was under "fair control." [R. 21].

- The daily activities plaintiff described are not limited to the extent one would expect given the complaints of disabling symptoms and limitations, including the alleged inability to stand and walk except for "3 to 5 minutes" at a time and her mental inability to maintain concentration past "a few minutes." [*Id.*].  These include getting up by 6 or 7 a.m., sometimes taking a nap before going to work at 4 p.m., praying, reading the Bible, watching television, keeping her house picked up, keeping her clothes up, cooking with the help of a friend, sweeping, doing the dishes, dusting, talking to her mother on the phone every day, taking the bus to work, visiting her son in jail every couple of weeks; reading or watching a movie after work in the evening; continued efforts to obtain visitation with her daughter before the court; and in February 2008, while living with friends, helping with laundry, dusting and cooking.  She reported walking to the store sometimes, watching television and reading; she reported no difficulty with her personal care; and she reported going to the store two or three times a month. [R. 21-22].

- With respect to plaintiff's job, the evidentiary record reflects continued work activity after the alleged onset date.  Although that work activity does not constitute otherwise disqualifying substantial gainful activity at step 1, it does indicate that she is able to perform work within the stated RFC.  She has no problems doing the job and does not have to leave work early very often.  She is working all the hours her employer allows her to work.  The fact that she can do her job as a telemarketer (a job which the vocational expert described as a "semi-skilled" job) indicates she must be able to maintain attention and concentration past "a few minutes." And since she says she has "no problems on the job," her allegation of mental limitations to the effect she cannot maintain attention and concentration past "a few minutes" is not supported by a preponderance of the evidence. [R. 22].

- As noted below, Ms. Garrett's actual activity indicates that her ability to function generally is not as restricted as she has characterized.  The most significant example of this, supporting such a conclusion, is her consistent work over some three (3) years.  She daily takes public transportation, obviously necessitating

17

standing and walking beyond her stated capacity; and interacts with members of the general public as a telemarketer—again, beyond "a few minutes." Indeed, she testified she is only permitted a break after some two (2) hours on the job; further indicating that her success as a telemarketer depends on meeting established quotas for "production"—which she achieves. This indicates, circumstantially, that she is able to "pay attention" beyond "a few minutes." [R. 16].

The ALJ provided the following two reasons, which, as discussed in great detail in Section III. A above, the court finds are not well supported in law and fact:

- Plaintiff testified she is not receiving treatment for her psychiatric or mental symptoms, and review of her medication list reveals no evidence of the use of any medications designed to treat psychiatric or mental symptoms. [R. 21].

- Plaintiff testified she takes no prescription pain medication and cannot afford medical or psychiatric care. However, she voluntarily terminated treatment at Family and Children's Services, a community-based mental health organization, because "it was too hard to get there." Family and Children's Services has multiple locations in Tulsa. The ALJ found "there are public facilities available to those who do not have insurance or who are unable to pay for medical care," and plaintiff "has provided no evidence that she has sought and been denied medical treatment from her treating sources or from indigent care facilities run by various government agencies." [*Id.*, citing *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985)].[7]

The court finds that the ALJ's adverse credibility finding is supported by substantial evidence, despite his citation to these two erroneous considerations. As in *Jones v. Astrue*, even where an ALJ has undisputedly erred in determining that a plaintiff has ceased treatment, that error does not necessarily require a reviewing court to hold an adverse credibility finding that cited such miscalculation as patently wrong, so long as such mistake does not undermine the ALJ's overall

---

[7] Plaintiff contends the ALJ's decision should be reversed because he improperly went outside the record to find evidence to use against her. The court disagrees. The ALJ made the observation in the context of assessing plaintiff's credibility, and it is but one factor among many that he relied upon in finding plaintiff's subjective complaints less than credible. The court also rejects plaintiff's argument that the ALJ's reference to *Teter v. Heckler* warrants reversal. In *Teter*, the court set forth the factors reviewing courts take into account in determining whether a claimant's failure to undertake treatment will preclude the recovery of disability benefits. The ALJ cited *Teter* as part of his discussion of plaintiff's discontinuation of psychiatric treatment. *See also Atkinson v. Astrue*, 2010 WL 2977593 (10th Cir. 2010) (unpublished) (noting that although plaintiff claimed he could not afford seizure medication, he provided no evidence that he sought to obtain any low-cost medical treatment or that he had been denied medical care because of his financial condition).

credibility finding. 623 F.3d 1155, 1161 (7th Cir. 2010). Here too, the ALJ's credibility finding is supported by other substantial evidence. Therefore, the court concurs with the Magistrate Judge's holding that the ALJ's credibility analysis does not warrant remand.

## Conclusion

Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #22] are granted in part and denied in part, as set forth above. The decision of the Commissioner is reversed and remanded for further proceedings consistent with the court's directive concerning assessment of plaintiff's mental limitations in evaluating her RFC.

ENTERED this 27th day of September, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT